**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TATYANA S.,<br>*Plaintiff*,<br><br>v.<br><br>COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 3:25-CV-1338 (KAD)<br><br><br><br><br>AUGUST 21, 2026 |

**MEMORANDUM OF DECISION**
**RE: PLAINTIFF'S MOTION TO REVERSE AND REMAND (ECF No. 21) AND COMMISSIONER'S MOTION TO AFFIRM (ECF No. 24)**

Kari A. Dooley, United States District Judge:

Plaintiff Tatyana S. ("Plaintiff" or "Claimant"), proceeding *pro se*,[1] brings this administrative appeal pursuant to 42 U.S.C. § 405(g). She appeals the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying her application for supplemental security income pursuant to Title XVI of the Social Security Act (the "Act"). Plaintiff moves to reverse the Commissioner's decision on the basis that the ALJ did not properly develop the record, and furthermore, that the ALJ's residual functional capacity (RFC) determination was not supported by substantial evidence. Alternatively, she seeks a remand for further proceedings before the Commissioner. In response, the Commissioner asserts that the ALJ fulfilled his obligation to develop the record and that the ALJ's decision is supported by substantial evidence in the record, and thus should be affirmed. For the reasons set forth below, the Plaintiff's Motion to Reverse or Remand, ECF No. 21, is DENIED, and the Commissioner's Motion to Affirm, ECF No. 24, is GRANTED.

[1] Although Plaintiff is proceeding *pro se*, she received legal assistance from the Federal Pro Se Legal Assistance Program at Quinnipiac Law School in preparing her appeal. ECF No. 21, at 1 n.1.

**Standard of Review**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). In addition, a claimant must establish that their physical or mental impairment or impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509" or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations[2]; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform

[2] Appendix 1 to Subpart P of Part 404 of C.F.R. 20 is the "Listing of Impairments."

their past relevant work; and (5) if the claimant is unable to perform their past work, the Commissioner must finally determine whether there is other work in the national economy which the claimant can perform in light of their RFC, education, age, and work experience. *Id.* §§ 404.1520(a)(4)(i)–(v), 404.1509. The claimant bears the burden of proof with respect to Steps One through Four, and the Commissioner bears the burden of proof as to Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). And it is well settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). Thus, substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can only reject the Commissioner's findings of facts "if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). Stated

simply, "if there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

**Facts and Procedural History**

On June 7, 2023, Plaintiff applied for supplemental security income (SSI)[3] pursuant to Title XVI,[4] alleging an onset of disability date of June 1, 2020. Her claim was initially denied on September 12, 2023, and upon reconsideration on November 27, 2023. Thereafter, a hearing was held before an Administrative Law Judge (ALJ) on May 8, 2024. Plaintiff appeared and testified at the hearing *pro se*.[5] On August 2, 2024, the ALJ issued a written decision denying Plaintiff's application for SSI.

In his decision, at Step One, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since April 20, 2023. At Step Two, the ALJ determined that Plaintiff had severe impairments: specifically, epilepsy and attention deficit hyperactivity disorder (ADHD). At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the regulations.[6] At Step Four, the ALJ found that the Plaintiff has the residual functional capacity (RFC) to perform medium work[7] subject to the following limitations:

> [Plaintiff is limited to] no more than occasional climbing of stairs or ramps. She must never climb ladders, ropes or scaffolds. There must be no work with hazardous machinery, no work at unprotected heights, and no commercial driving.

[3] The regulations for supplemental security income are found at 20 C.F.R. § 416.1400 *et seq.*

[4] 42 U.S.C. § 1381 *et seq.*

[5] The ALJ certified that Plaintiff had been informed of her right to representation at the hearing, but she elected to appear and testify without counsel or any other representative. Certified Social Security Trs. ("CAR"), ECF No. 17, at 7.

[6] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing qualifying impairments).

[7] Defined in 20 C.F.R. § 404.1567(c) as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."

> She is limited to simple, routine tasks with no strict time/production requirements. She may occasionally work with the general public in a stable, predictable work environment.

Certified Social Security Trs. ("CAR"), ECF No. 17, at 11. The ALJ further found that Plaintiff has no past relevant work. At Step Five, the ALJ concluded that, before November 3, 2024, there were a significant number of jobs in the national economy that Plaintiff could perform, considering her age, education, work experience, and limitations in the RFC. Accordingly, the ALJ concluded that Plaintiff was not disabled under § 1614(a)(3)(A) of the Act.

The Appeals Council did not assume jurisdiction of Plaintiff's case, *see* 20 C.F.R. § 404.984(d). This appeal was timely filed.

**Discussion**

Plaintiff challenges the basis for the ALJ's decision on two grounds: (1) Plaintiff argues that the ALJ failed to fully develop the evidence of record before deciding that her epilepsy did not meet one of the Listings and in rendering her mental health limitations; and (2) she argues that the ALJ's RFC determination was not supported by substantial evidence.

***Development of the Record/Listings***

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (internal citations omitted); *see also Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009) ("[S]ocial security hearings are not (or at least are not meant to be) adversarial in nature."). "It is the Commissioner's affirmative responsibility to develop the record in such a way as to ensure a full and fair hearing." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 220 (S.D.N.Y. 2004). "When a record is incomplete, a decision based thereon is not supported by

substantial evidence." *Beutel v. Berryhill*, No. 3:17-CV-1193 (SALM), 2018 WL 3218662, at *10 (D. Conn. July 2, 2018) (citing *Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996)).

Indeed, the law is clear that "where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate. And when 'further findings would so plainly help to assure the proper disposition of [the] claim, . . . remand is particularly appropriate.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005) (quoting *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999)). Remand is also appropriate where the Court is "'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'" *Pratts*, 94 F.3d at 39 (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)). "However, the ALJ's duty to develop the record is not limitless." *Amanda P. v. Comm'r of Soc. Sec.*, 545 F. Supp. 3d 40, 47 (W.D.N.Y. 2021). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information. . . ." *Id.* (quoting *Rosa*, 168 F.3d at 79 n.5) (internal quotation marks and citation omitted). And "[w]hen an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant." *Santiago v. Astrue*, No. 3:10-CV-937 (CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (Droney, J.). It is the Plaintiff's burden to show that the ALJ's outcome would have been different if the records had been considered. *See id.*

Further, "[t]he Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability. The regulations also provide for a finding of such a disability *per se* if an individual has an impairment that is 'equal to' a listed impairment." *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998); *see also* 20

C.F.R. § 416.920(d). "An impairment meets the requirements of one of these listings 'when it satisfies all of the criteria' of a [L]isting." *Bouton*, 2007 WL 2889449, at *2 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)); *see also* 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). "The claimant . . . bears the burden of proving that h[is] impairments meet [a] particular Listing." *Rivera v. Berryhill*, No. 3:17-CV-1760 (SRU), 2019 WL 4744821, at *11 (D. Conn. Sept. 30, 2019); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (summary order). "To show that he meets the criteria [of a Listing], [the claimant] must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques." *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 396 (S.D.N.Y. 2019) (internal quotation marks omitted). "[T]he ALJ is required to articulate the specific reasons justifying his decision that the claimant does or does not meet the relevant listing." *Howarth v. Berryhill*, No. 3:16-CV-1844 (JCH), 2017 WL 6527432, at *5 (D. Conn. Dec. 21, 2017) (citing cases).

Plaintiff argues the ALJ should have held another hearing to consider the testing she received at Yale New Haven Hospital in June 2024, which was after the hearing on May 8, 2024, but before the ALJ's decision on August 2, 2024.[8] Plaintiff argues that without the MRI and EEG studies ordered by Dr. Wahab, the ALJ could not have adequately determined whether Plaintiff met the criteria of Listing 11.02 for epilepsy. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.02. Although not clear, she also appears to challenge the mental health limitations imposed in her RFC

[8] Plaintiff also attaches as exhibits medical records from Yale New Haven Hospital from June 2025, *see* ECF No. 21, at 15–32, which show that she suffered from her grand mal seizure in years after she failed to take her medication, *see id.* at 16, 24. However, these records came about long after the ALJ's decision, and as the result of a somewhat unpredictable event (Plaintiff's first seizure in two years). There is no way for the ALJ to have developed the record to account for them. Further, to the extent Plaintiff argues that the records warrant remand for further consideration, there is nothing in the records that would support a finding that the ALJ's outcome would have been different if he had considered those records. Although surely upsetting for the Plaintiff to experience her first seizure in two years, the records generally support the ALJ's findings: that Plaintiff is susceptible to major seizures, but that they are well controlled with medication. *See* CAR at 14.

without the benefit of these records. In response, the Commissioner argues that the ALJ adequately developed the record prior to his decision and that regardless, Plaintiff has not shown that the outcome would have been different upon consideration of the June 2024 tests. The Court agrees with the Commissioner.

In making his decision, the ALJ found persuasive the records from Dr. Hillbrand and Dr. Guarnaccia from August 2023. CAR at 15. Dr. Hillbrand and Dr. Guarnaccia both found that the Plaintiff was at risk for grand mal seizures, but that she had not had a grand mal seizure since January 2023, and she otherwise showed intact function, comprehension, and concentration, albeit moderately impaired. CAR at 648, 657. The ALJ credited other medical records, such as the state agency's psychological consultants at the reconsideration level, that also supported this conclusion. *See id.* at 74–77 (assessing mild to moderate impairments in understanding, interacting with others, concentrating, and adapting, but seizures well controlled with medication).

As to the Listing determination, "[t]o establish a disability under Listing 11.02, a claimant must present evidence that she suffers from a certain type of seizure, occurring at certain frequencies." *Mahmud v. Saul*, No. 3:19-CV-1666 (TOF), 2020 WL 6866674, at *8 (D. Conn. Nov. 23, 2020).[9] In this vein, the ALJ explicitly found that "the record does not indicate any frequency of seizures to listing level." CAR at 10. Although the ALJ did not articulate additional analysis for this finding at Step Three, the decision otherwise provides the necessary analysis. *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (summary order) ("[T]he absence of an express rationale for an ALJ's conclusions does not prevent us from upholding them so long as we are able to look to other portions of the ALJ's decision and to clearly credible

[9] "These frequencies range from once a month (§ 11.02A) to once a week (§ 11.02B) to once every two months (§ 11.02C). The seizures must occur for a period of three (§ 11.02A, § 11.02B) or four (§ 11.02C) consecutive months despite adherence to prescribed treatment." *Mahmud*, 2020 WL 6866674, at *8.

evidence in finding that his determination was supported by substantial evidence." (quotation omitted)).

The ALJ discussed in detail the frequency of Plaintiff's seizures at Step Four. *See* CAR at 12–14. Plaintiff had her first grand mal seizure in June 2020, and after she was put on medication, she reported that she had been seizure-free between August 2020 and August 2022. *Id.* at 13–14. Plaintiff had another major seizure in August 2022, after her mother reported that she had been off her medications for months. *Id.* at 14. She had another seizure in November 2022, and her last one in January 2023. *Id.* Plaintiff admittedly had not had a grand mal seizure since January 2023, over a year and a half before the ALJ's decision. *Id.* at 12. The ALJ reviewed this history, and concluded the following:

> The records show that the claimant had not experienced a major seizure since January 2023. Since remaining compliant with her medications, her seizure activity has decreased. . . .
>
> Each of these factors suggest that the claimant's symptoms do not limit her activities to the extent alleged. Thus, while the undersigned finds that the claimant has impairments that more than minimally impact her ability to engage in work related activities, the undersigned is not persuaded that the degree of impairment renders her disabled.

*Id.* at 14. Therefore, although he did so only summarily at Step Three, the ALJ clearly explained why he found that Plaintiff did not meet the Listing severity requirements in terms of the frequency of her seizures over time. As noted above, Listing 11.02 contemplates seizure activity at a much greater frequency than was evidenced in the record here. And Plaintiff has not met her burden of establishing otherwise.

In short, Plaintiff does not satisfy her burden of demonstrating that her medical records from testing in June 2024 would have changed the determinations as to either her mental impairments or the Listings determination. She does not identify any record that conflicts with

Dr. Hillbrand's and Dr. Guarnaccia's findings: indeed, Dr. Wahab's examination at Yale New Haven in June 2024 concluded that her epilepsy is currently well controlled by medication, and that her neurological signs were normal, and that previous imaging had come back normal as well. CAR at 777, 782.

***RFC Determination***

A claimant's RFC is "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, an ALJ uses "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3); *see also Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) ("[T]he ALJ must weigh all the evidence to make a[n RFC] finding consistent with the record as a whole."). But it is the plaintiff's burden to provide evidence to establish any work-related limitations. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).

When evaluating the weight of medical opinions, an ALJ is guided by the factors outlined in 20 C.F.R. § 404.1520c.[10] *See Rubin v. O'Malley*, 116 F.4th 145, 155 (2d Cir. 2024). The regulation requires the ALJ to "consider and articulate 'how persuasive the SSA finds all of the medical opinions and all of the prior administrative medical findings in the claimant's case record.'" *Id.* (alterations omitted) (quoting 20 C.F.R. § 404.1520c(b)). If two or more medical opinions are equally well-supported by the record, then the ALJ "must articulate how []he considered other factors, including the source's relationship with the claimant or level of specialization, as to each medical opinion or administrative finding." *Id.* (citing 20 C.F.R. § 404.1520c(b)(3), (c)). "In evaluating the persuasiveness of a medical opinion, an ALJ must consider five central factors, the two 'most important factors' being supportability and

[10] For claims filed prior to March 27, 2017, the Commissioner and ALJs apply the "treating physician rule," found in 20 C.F.R. § 404.1527. *See Schillo v. Kijakazi*, 31 F.4th 64, 71 & n.1 (2d Cir. 2022). However, because Plaintiff's claim was filed after March 27, 2017, her claim is governed by the new regulations at 20 C.F.R. § 404.1520c. *See id.* at 71 n.1.

consistency." *Villier ex rel. N.D.D.R. v. Comm'r of Soc. Sec.*, No. 23-893, 2024 WL 2174236, at *2 (2d Cir. May 15, 2024) (summary order). Supportability is the extent to which a medical source uses "objective medical evidence" to support their opinions. *See* 20 C.F.R. § 404.1520c(c)(1). Consistency, on the other hand, refers to how "consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources . . . ." *Id.* § 404.1520c(c)(2).

As to the Plaintiff's RFC formulation, Plaintiff asserts that it does not adequately account for her staring spells. In evaluating the impact of Plaintiff's staring spells on her RFC, the ALJ mainly relied upon the Plaintiff's own testimony, as well as her self-reports to doctors between 2023 and 2024. *See* CAR at 14. Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ did not obtain a medical source opinion regarding the frequency of her staring spells. The Court disagrees.

"Contrary to Plaintiff's contentions, there is no requirement that an ALJ's RFC finding be based on a medical opinion." *April W. v. Comm'r of Soc. Sec.*, No. 1:24-CV-44 (MAV), 2024 WL 4804778, at *5 (W.D.N.Y. Nov. 14, 2024) (quotation omitted). "[A]n ALJ's RFC determination need not be supported by a specific medical opinion, particularly where the plaintiff has failed to adduce evidence inconsistent with the ALJ's RFC determination." *Thomas W. v. Comm'r of Soc. Sec.*, No. 21-CV-207 (JGW), 2023 WL 2633771, at *4 (W.D.N.Y. Mar. 24, 2023).

Plaintiff's self-reports in treatment notes were consistent with the ALJ's conclusion that, combined with signs of normal memory and cognition, her staring spells were "not to a frequency that would interfere with work." CAR at 14. Plaintiff herself testified that she experienced "two to three staring spells per week lasting a few minutes." *Id.* The ALJ, in his discretion, determined that this would not substantially impact her ability to work. And Plaintiff did not come forward

with any conflicting medical information or clear gaps in the administrative record "that gave rise to an affirmative obligation to seek a medical opinion." *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 110 (2d Cir. 2020) (summary order) (affirming ALJ's RFC determination where he did not seek a medical opinion but treatment notes were "in line with the ALJ's RFC determinations").

On appeal, it is not the role of the Court to review the record *de novo*. *See generally Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (holding that the Court may reject the Commissioner's findings "only if a reasonable factfinder would have to conclude otherwise" (quotation and emphasis omitted)). Indeed, the Court's assessment on review is "so deferential that there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). Accordingly, the Court finds that the ALJ's formulation of Plaintiff's RFC is supported by substantial evidence.

**Conclusion**

For the foregoing reasons, Plaintiff's Motion to Reverse or Remand (ECF No. 21) is DENIED, and the Commissioner's Motion to Affirm (ECF No. 24) is GRANTED. The Clerk of the Court is directed to enter judgment in favor of the Commissioner and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of August, 2026.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE